UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**ANY AND ALL FUNDS CONTAINED** )<br>**IN BANCORPSOUTH ACCOUNT NO.** )<br>**XXXX-581-3, HELD IN THE NAME OF** )<br>**NAGEL ENTERPRISES INC.; ANY** )<br>**AND ALL FUNDS CONTAINED IN** )<br>**BANCORPSOUTH ACCOUNT NO.** )<br>**XXXX-746-5, HELD IN THE NAME OF** )<br>**JED L. NAGEL; ANY AND ALL** )<br>**FUNDS CONTAINED IN SOUTHCITY** )<br>**BANK ACCOUNT NO. XXX5204,** )<br>**HELD IN THE NAME OF NAGEL** )<br>**ENTERPRISES, INC., d/b/a Abanks** )<br>**Mortuary; ANY AND ALL FUNDS** )<br>**CONTAINED IN SOUTHCITY BANK** )<br>**ACCOUNT NO. XXX3977, HELD IN** )<br>**THE NAME OF JED. L. NAGEL; ANY** )<br>**AND ALL FUNDS CONTAINED IN** )<br>**SOUTHCITY BANK ACCOUNT NO.** )<br>**XXX4893, HELD IN THE NAME OF** )<br>**NAGEL ENTERPRISES, INC. d/b/a** )<br>**Abanks Mortuary,** )<br>)<br>**Defendants.** ) | **CASE NO. 2:12-CV-0735-SLB** |

**MEMORANDUM OPINION**

This case is presently pending before the court on Motions to Dismiss and Motions to Strike filed by claimants, Nagel Enterprises, Inc., (doc. 9), Abanks Mortuary and Crematory, (doc. 10), and Jed L. Nagel, (doc. 11). The United States has filed a Verified

Complaint for Forfeiture in Rem, seeking forfeiture of defendant funds held in the identified accounts. (Doc. 1.) Claimants allege the Complaint is due to be dismissed because it is not properly verified, (*see* doc. 9 at 2; doc. 10 at 2-3; doc. 11 at 2), it does not "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," (*see* doc. 9 at 2-3; doc. 10 at 3; doc. 11 at 2-3), and "[t]he Complaint fails to state facts on which relief can be granted," (*see* doc. 9 at 3; doc. 10 at 3; doc. 11 at 3). Also, claimants have moved to strike ¶ 33 of the Complaint as irrelevant to the defendant bank accounts. (*See* doc. 9 at 7-8; doc. 10 at 8; doc. 11 at 7.) Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that claimants' Motion to Dismiss and Motions to Strike, (docs. 9, 10, 11) are due to be denied.

## I.  MOTION TO STRIKE

Claimants have filed a Motion to Strike paragraph 33 of the Verified Complaint, which refers to the guilty pleas of Demosthenes Lalisan, the Director of the Alabama Organ Center [AOC], and Richard Hicks, the Assistant Director of AOC. They contend:

> The matter of the AOC employees pleading guilty has not been set out in the Complaint with any facts that relate their pleas to the Defendant property. From aught that appears, their pleas do not relate to the Defendant property. Supplemental Rule G[(2)](f) requires facts to be alleged in the Complaint, but those allegations merely hint at some connection between those pleas and this matter without factually relating them. The mere fact that two [people pled] guilty to some offenses which could as well arise from their relationship with their employer as from any relationship with the Claimants. [sic]  The suggestion of a relationship is clear enough, but there are no relational facts as Supplemental Rule G[(2)](f) requires. So, the guilty pleas of the two AOC employees add nothing to the case for forfeiture and should be struck from the Complaint.

(Doc. 11 at 7; *see also* doc. 9 at 7-8; doc. 10 at 8.)

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The allegation – that two AOC employees, involved in the fraud at issue in this case, have pled guilty to health care fraud, mail fraud, and conspiracy – is not redundant, immaterial, impertinent, or scandalous.

The Verified Complaint alleges that Lalisan approved invoices containing false charges, and, in return, Abanks Mortuary sent checks to Lalisan and Hicks, written on the BancorpSouth account XXXX-581-3 and SouthCity Bank account XXX4893. The court takes judicial notice of the Amended Information in *United States v. Lalisan and Hicks*, Case No. 2:11-CR-0315-RDP-TMP, doc. 6 (N.D. Ala. Sept. 28, 2011).[1] The Amended Information alleges that the owner of a Birmingham funeral home made kickback payments to Lalisan and Hicks on accounts owned or controlled by the owner. The kickback payments were in return for "recommend[ing] and promot[ing] AOC's employment of the Funeral Home for services to be provided to AOC and paid for by UAHSF," and for "approv[ing] payments to the Funeral Home from UAHSF." *Id*. ¶¶ 19-20. Abanks Mortuary was the only funeral home involved in AOC's tissue procurement process. (Doc. 1 ¶ 18.)

---

[1] *See In re Delta Resources, Inc.*, 54 F.3d 722, 725 (11th Cir. 1995)(quoting *United States v. Jones*, 29 F.3d 1549, 1553-54 (11th Cir.1994)); *see also Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010)(citing, *inter alia*, Fed. R. Evid. 201(b)).

The court finds that the allegation in the Complaint that Lalisan and Hicks have pled guilty to taking kickbacks from Abanks is not redundant, immaterial to the civil forfeiture action, impertinent, or scandalous. Therefore, claimants' Motion to Strike will be denied.

## II. MOTIONS TO DISMISS

### A. MOTION TO DISMISS STANDARD

Claimants has moved to dismiss plaintiff's Verified Complaint for failure to state a claim upon which relief can be granted. The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's statement of a claim for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)(internal citations and quotations omitted).

When addressing a 12(b)(6) motion to dismiss, the court accepts the allegations in the Complaint as true and construes those allegations in the light most favorable to plaintiff. *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)(quoting *Am. Dental Ass'n*, 605 F.3d at 1288). To survive a Motion to Dismiss, "the complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id*. (quoting *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Bell*

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)))(internal quotations omitted).  A claim is "plausible" if the facts are sufficient "to allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> Notwithstanding the Rule 12(b)(6) standard, Supplemental Rule G(2) also governs the sufficiency of the complaint in civil forfeiture cases.  Fed. Supp. R. G(8)(b)(ii).  Supplemental Rule G(2) requires a verified complaint stating the grounds for subject matter jurisdiction, in rem jurisdiction, and venue.  Fed. Supp. R. G(2)(a) & (b).  The complaint must also describe the property with reasonable particularity; if the property is tangible, allege its current location and its location when seizure occurred; and identify the statute enabling forfeiture.  Fed. Supp. R. G(2)(c)-(e).  Finally, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. Supp. R. G(2)(f).  "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D); Fed. Supp. R. G(8)(b)(ii).

*United States v. Nineteen Thousand Eight Hundred Fifty Five ($19,855.00) Dollars in U.S. Currency*, No. 2:12-CV-146-WKW, 2012 WL 5869090, *1 (M.D. Ala. Nov. 19, 2012)(footnote omitted).  "[The] standards [set forth in Fed. Supp. R G(2)] are more stringent than the general pleading requirements set forth in the Federal Rules of Civil Procedure, . . . an implicit accommodation to the drastic nature of the civil forfeiture remedy.  *See United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993).  Because the court finds that the Verified Complaint meets the Fed. Supp. R. G(2)(f) standard, it will not discuss whether the Verified Complaint meets the standards under Fed. R. Civ. P. 12(b)(6).

B. **STATEMENT OF FACTS**

In the Verified Complaint for Forfeiture in Rem, plaintiff alleges:

5. On August 10, 2011, agents of the Federal Bureau of Investigation ("FBI") restrained $137,798.20 contained in BancorpSouth Account No. XXXX-581-3, held in the name of Nagel Enterprises, Inc.; $1,062,206.68 contained in BancorpSouth Account No. XXXX-746-5, held in the name of Jed L. Nagel; $38,431.47 contained in SouthCity Bank Account No. XXX5204, held in the name of Nagel Enterprises, Inc., d/b/a Abanks Mortuary; $1,240,672.66 contained in SouthCity Bank Account No. XXX3977,. held in the name of Jed L. Nagel, and $80,746.01 contained in SouthCity Bank Account No. XXX4893, held in the name of Nagel Enterprises, d/b/a Abanks Mortuary (hereafter, collectively, the "Defendant Funds"), within the Northern District of Alabama.

6. The Defendant Funds remain within the Northern District of Alabama.

. . .

14. The Alabama Organ Center (AOC) is a component of the Department of Surgery for the University of Alabama Health Services Foundation (UAHSF). UAHSF is responsible for the financial obligations of AOC. All AOC officers and directors are employed by UAHSF.

15. The AOC is the designated federally approved organ procurement organization for the state of Alabama. Its primary purpose is to provide organs and tissue to persons in need of transplantation. The AOC is approved by the Medicare program for reimbursement.

16. Since its founding, the AOC has provided thousands of kidneys for transplantation, as well as hundreds of other transplantable organs such as hearts, lungs, livers, and pancreases. In addition, the AOC harvests cadaveric tissues such as bone, skin, corneas, ligaments, tendons, dura mater, and heart valves.

17. Nagel Enterprises, Inc., is an Alabama corporation established in 1997, conducting business as Abanks Mortuary & Crematory. Jed L. Nagel is the director of Nagel Enterprises d/b/a Abanks Mortuary.

18. In or around 2003, AOC undertook a quality improvement initiative to centralize its tissue procurement process in one location, specifically the Abanks Mortuary, in order to save the significant costs associated with tissue procurement that had previously been performed using hospital operating rooms.

19. The arrangement between Abanks and AOC called for Abanks to provide transportation of the donor body from the referring hospital to the embalming room at the Abanks facility in order to recover the tissue. AOC was to pay Abanks a contracted fee for all costs associated with its services, including transportation and use of the embalming room for tissue recovery procedures.

20. In approximately June 2009, AOC completed construction of a tissue recovery room, located on property adjacent to the Abanks mortuary and owned by Jed Nagel, for exclusive use to conduct tissue recovery procedures (hereafter, the "AOC facility"). Construction of the AOC facility eliminated the need for use of the Abanks embalming room to recover cadaveric tissue, however, Abanks still provided transportation services for the donor body from the referring hospital to the AOC facility. AOC paid Nagel a monthly lease amount for use of this property, that was billed separately from the transportation services provided by Abanks.

21. The new AOC facility was in operation no later than July 2009.

22. As of July 2009, the Director of AOC was Demosthenes "Dem" Y. Lalisan. The Associate Director of AOC as of July 2009 was Richard Alan Hicks.

23. As of July 2009, no tissue recovery procedures were performed on behalf of AOC in the Abanks embalming room.

24. Abanks continued to charge AOC for use of the Abanks embalming room for tissue recovery cases after July 2009, when the only service Abanks provided for those tissue recovery cases was transportation of the donor body.

25. The following table reflects the invoices submitted by Abanks to AOC for payment that include false charges for use of the Abanks embalming room for tissue recovery cases when no such service was provided by Abanks:

. . .

26. Each of the above invoices was submitted to the Director of AOC, Demosthenes Lalisan, for approval, and was then forwarded on to UAHSF for payment. UAHSF sent checks payable to Abanks Mortuary through the United States Postal Service in payment of the above invoices.

27. Each check that was mailed to Abanks Mortuary, containing payment for fraudulent charges, constitutes the proceeds of mail fraud, in violation of 18 U.S.C. § 1341. The following table reflects some of the checks that were mailed to Abanks Mortuary in payment for the invoices listed above.

. . .

28. Each of the checks listed above was deposited by Abanks Mortuary into either BancorpSouth Account No. XXXX-581-3, or SouthCity Bank account X4893, which constitutes a monetary transaction with the proceeds of mail fraud, in violation of 18 U.S.C. § 1957.

29. BancorpSouth is, and was as of July 2009, a financial institution insured by the Federal Deposit Insurance Corporation, operating in and affecting interstate commerce.

30. SouthCity Bank is, and was as of July 2009, a financial institution insured by the Federal Deposit Insurance Corporation, operating in and affecting interstate commerce.

31. In conjunction with the submission of invoices for approval to Demosthenes Lalisan, the Director of AOC, for payment, Abanks Mortuary would pay a kickback in the form of checks payable to Demosthenes Lalisan and Richard Hicks personally. The checks were written off of BancorpSouth Account No. XXXX-581-3 and occasionally from the SouthCity Bank Account No. XXX4893.

32. The following table reflects the kickbacks that were paid by Abanks Mortuary to Demosthenes Lalisan and Richard Hicks from July 2009 through June 2011. Each check, tendered to Lalisan and Hicks at the same time the invoices containing fraudulent charges were submitted for approval by the AOC officers, constitutes a money laundering transaction, in violation of 18 U.S.C. § 1956(a)(I)(A).

. . .

33. As a result of the kickbacks and mail fraud activities surrounding the relationship between AOC and Abanks Mortuary, Demosthenes Lalisan was charged in a three-count Information with conspiracy, health care fraud, and mail fraud, and pled guilty to all three counts on November 18, 2011. [NDAL Criminal Case No. 2:11-CR-315-RDP-TMP, Docket at 6, 8, and Docket Entry 11/18/11]. Also as a result of those activities, Richard Hicks was charged in the same Information with conspiracy, health care fraud, and mail fraud, and pled guilty to all three counts on November 18, 2011. [NDAL Criminal Case No.2:11-CR-315-RDP-TMP, Docket at 6, 7, and Docket Entry 11/18/11].

34. Jed Nagel and Abanks Mortuary also conducted numerous other financial transactions with the mail fraud proceeds received through the payments from UAHSF. The funds were frequently moved among other accounts held in the name of Nagel Enterprises and/or Jed Nagel individually. The following table reflects some of the movements of the Defendant Funds through the financial system.

. . .

35. Regions Bank is, and was as of July 2009, a financial institution insured by the Federal Deposit Insurance Corporation, operating in and affecting interstate commerce.

36. National Bank of Commerce is, and was as of July 2009, a financial institution insured by the Federal Deposit Insurance Corporation, operating in and affecting interstate commerce.

37. Each financial transaction detailed above constitutes a monetary transaction conducted with criminally derived property, in violation of 18 U.S.C. § 1957.

38. Based on the facts set forth above, the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or 1957. The Defendant Funds are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1341, 1956, or 1957.

(Doc. 1 ¶¶ 5-6, 14-38.)

The court takes judicial notice of the following facts set forth in the Amended Plea Agreement of Demosthenes Lalisan:

      g. In or about 2003, at the suggestion of defendant DEMOSTHENES LALISAN and [Richard Hicks], AOC began a process to centralize its tissue procurement system.

      h. The process involved selecting a third party funeral home to provide these services for which UAHSF would pay a fee.

      i. In or about 2003, defendant DEMOSTHENES LALISAN and [Richard Hicks] recommended to UAHSF the selection of a funeral home located in Birmingham, Alabama (the "Funeral Home") to provide these services.[2]

      j. UAHSF made regular payments to Funeral Home from sometime in or about 2003 until sometime in June 2011 for services rendered to AOC. Payments from UAHSF to the Funeral Home were made approximately once a month. The amount of the payments to the funeral home were based on invoices submitted by the Funeral Home and approved by defendant DEMOSTHENES LALISAN.

      k. Payments from UAHSF to the Funeral Home were made by checks drawn on UAHSF bank accounts and sent to the Funeral Home by United States Mail.

      l. Beginning in or about 2003, the owner of the Funeral Home, an individual hereinafter identified as Owner A,[3] began making kickback payments to defendant DEMOSTHENES LALISAN and [Richard Hicks].

---

[2]The Verified Complaint alleges that Abanks Mortuary was selected by AOC a the centralized location for tissue procurement. (Doc. 1 ¶ 18.)

[3]Claimant Jed Nagel is the Director of Nagel Enterprises, Inc., doing business as Abanks Mortuary. (Doc. 1 ¶ 17.) The court infers that "Owner A" refers to Jed Nagel.

      m.  The kickback payments to defendant DEMOSTHENES LALISAN and [Richard Hicks] were made by checks drawn on accounts owned or controlled by Owner A.

      n.  The purpose of the kickback payments from Owner A, either directly, or by and through entities under Owner A's control, was for defendant DEMOSTHENES LALISAN and [Richard Hicks] to improperly obtain funds from UAHSF.

      o.  The kickback payments to defendant DEMOSTHENES LALISAN and [Richard Hicks] typically coincided with invoices submitted from the Funeral Home to UAHSF.  The total kickback payments to defendant DEMOSTHENES LALISAN and [Richard Hicks] were approximately 20% of the amounts paid by UAHSF to the Funeral Home.

      . . .

      q.  In exchange for receiving kickback payments from Owner A, defendant DEMOSTHENES LALISAN did recommend and promote AOC's employment of the Funeral Home for services to be provided to AOC and paid for by UAHSF.

      r.  In exchange for receiving kickback payments from Owner A, defendant DEMOSTHENES LALISAN did participate in ensuring that the invoices from 2003 to June 2011 submitted to AOC totaling $2,310,649.81 by the Funeral Home were paid by UAHSF.

      s.  In exchange for receiving kickback payments from Owner A, defendant DEMOSTHENES LALISAN knowingly and intentionally concealed from UAHSF the receipt of the kickback payments from Owner A to defendant DEMOSTHENES LALISAN and [Richard Hicks].

*United States v. Lalisan*, Case No. 2:11-CR-0315-RDP-TMP, doc. 8 at 4-7 (N.D. Ala. Sept. 29, 2011)(footnotes added).

## C. DISCUSSION

### 1. Verification

Claimants allege:

1. The Court lacks jurisdiction of this action because Supplemental Rule G(2)(a) requires that the Complaint for Forfeiture *in rem* must be "verified" and the Complaint in this case is not verified in accordance with the rule. The so-called verification of the Complaint only consists of:

a) A repetition of hearsay obtained from "other law enforcement officers" who are not otherwise identified. There is no identification of the form, date, place, or substance of the alleged hearsay communication;

b) A law enforcement officer's statement that part of the verification is based on his unidentified and undefined "participation in the investigation surrounding the seizure of the Defendant Funds in this action". There is no indication of what the alleged "participation" was or what information, if any, it produced; and

c) The officer's undefined experience in investigation. There is no statement of what the experience is or how it added to the verification knowledge.

None of these grounds equate with personal knowledge of the facts sought to be verified. In fact, for all the verifier knows, none of the facts sought to be verified are true, or even completely stated. There is nothing to support the use of the description "kickbacks" used in the Complaint. Since the Complaint is not properly verified, this Court lacks jurisdiction of this matter and the Complaint must be dismissed.

2. The Complaint must be dismissed because it fails to comply with Supplemental Rule G(2)(a) in that it is not properly verified.

(Doc. 11 at 2; *see also* doc. 9 at 2; doc. 10 at 2-3.)

Supplemental Rule G(2)(a) requires that a complaint in a forfeiture action must be verified. Fed. Supp. R. G(2)(a). Unlike affidavits submitted under Fed. R. Civ. P. 56(c)(4),[4] verification does not have to be made on personal knowledge; verification pursuant to 28 U.S.C. § 1746[5] may be made on "information and belief." *See United States v. 8 Gilcrease Lane*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008)(quoting *Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) and citing 28 U.S.C. § 1746). "Thus, the inclusion of the qualifying

---

[4]Fed. R. Civ. P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

[5]28 U.S.C. § 1746 states:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

language, 'to the best of my knowledge and belief,' does not render the Complaint's Verification deficient." (*Id.*)

The verification in this case states:

> I, MICHAEL MARQUET, am a Special Agent with the Federal Bureau of [Investigation] (FBI), and the agent assigned responsibility for this case.
>
> I have read the contents of the foregoing Complaint for Forfeiture *In Rem*, and the statements contained therein are true to the best of my knowledge and belief. I base my knowledge for this verification of the Complaint for Forfeiture *In Rem* on the following:
>
> a. Information provided to me by other law enforcement officers who have participated in the investigation of Jed Nagel, Abanks Mortuary, Demosthenes Lalisan and Richard Hicks;
>
> b. My participation in the investigation surrounding the seizure of the Defendant Funds in this action;
>
> c. My experience in investigations of mail fraud and money laundering transactions, and the experience of other law enforcement officers related to mail fraud and money laundering investigations.
>
> I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

(Doc. 1 at 16.)

This statement, which includes "an assertion that the facts are true and correct" and "an averment that the first assertion is made under penalty of perjury," is sufficient to satisfy the requirement that the Complaint for Forfeiture *In Rem* be verified. *See 8 Gilcrease Lane*, 587 F. Supp. 2d at 139. Therefore, claimants' Motion to Dismiss based on an inadequate verification will be denied.

**2. Failure to State a Claim**

Federal Supplemental Rule G(2)(f) provides, "The complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Claimants contend that "[t]he Complaint is due to be dismissed because it fails as required by Supplemental Rule G(2)(f) to state sufficiently detailed facts." (Doc. 11 at 2; *see also* doc. 9 at 2; doc. 10 at 3.) Specifically, claimants contend that the Verified Complaint "fails to allege any facts to show that [claimants have] done anything wrong." (Doc. 9 at 3; doc. 10 at 3; doc. 11 at 3.) They also contend that Lalisan and Hicks were "authorized . . . to make personal profit from the body parts work for AOC," and that the space created by AOC for tissue removal was leased to AOC by Nagel. (Doc. 9 at 3, 4; doc. 10 at 3, 4; doc. 11 at 3, 4.)

> Plaintiff responds:
>
> Here, in its complaint, the United States has set forth its theories of forfeiture [footnote], the criminal activity to which it alleges that all of the Defendant Funds are connected [footnote], and has listed in detail, where relevant, each invoice, check number, recipient, amount, date and account number it contends are involved in the criminal activity and thus subject to forfeiture. [Doc. 1]
>
> [Footnote] The theories of forfeiture are that the Defendant Funds constitute proceeds of a violation of 18 U.S.C. §§ 1341, 1956, or 1957, and/or that the Defendant Funds constitute property involved in a violation of 18 U.S.C. §§ 1956 or 1957. [Doc. 1].
>
> [Footnote] The criminal activit[ies] alleged by the United States in the complaint [are] mail fraud in violation of 18 U.S.C. § 1341, promotion money laundering in violation of 18 U.S.C. § 1956, and/or so-called "money spending" money laundering in violation of 18 U.S.C. § 1957. [Doc. 1].

15

(Doc. 14 at 6 and nn. 2-3.) The court finds that the allegations in the Verified Complaint have "state[d] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. Supp. R. G(2)(f).

The Verified Complaint alleges that the tissue recovery room, adjacent to Abanks Mortuary, was leased by AOC and billed separately from the transportation services. (Doc. 1 ¶ 20.) In addition to the lease payments, Abanks Mortuary also billed AOC for use of its embalming room, after the establishment of the tissue recovery room, in its invoices for transportation services. (*Id.* ¶¶ 24-25.) Contrary to claimants' assertions, the Verified Complaint does not contain a claim based on the lease payments for the tissue room; rather the claim is that Abanks Mortuary continued to bill for the use of its embalming room after the construction of the tissue recovery room next door.

Also, claimants assert that UAHSF authorized the kickbacks – payment of approximately 20% of the amount received by Abanks from UAHSF for services rendered to AOC; therefore, the payments to Lalisan and Hicks are not "facts that support a reasonable belief that the government will be able to meet its burden of proof at trial." The Verified Complaint alleges that Abanks Mortuary submitted false invoices to AOC that were approved by Lalisan and Hicks; at the same time, Abanks Mortuary sent checks to Lalisan and Hicks, representing approximately 20% of the fraudulent invoices. Although claimants may be able to show that Lalisan and Hicks were authorized to receive certain payments, the court finds

incredible the suggestion that UAHSF authorized Lalisan and Hicks to receive payments for approving false invoices.

The Verified Complaint alleges that Abanks Mortuary received payments for the fraudulent invoices through the mail in violation of 18 U.S.C. § 1341. (Doc. 1 ¶¶ 26-27.) These checks, the proceeds of the mail fraud, were deposited into one of two of the accounts from which the defendant funds were seized – BancorpSouth No. XXXX-581-3 or SouthCity Bank No. X4893; this activity "constitutes a monetary transaction with the proceeds of mail fraud, [which is a] violation of 18 U.S.C. § 1957." (*Id.* ¶ 28.) Moreover, the checks payable to Lalisan and Hicks from these two accounts constitute money laundering transactions in violation of 18 U.S.C. § 1956(a)(1)(A). (*Id.* ¶ 32.)  Also, plaintiff contends that claimants Nagel and Abanks Mortuary "conducted numerous other financial transactions with the mail fraud proceeds received through the payments from UAHSF. The funds were frequently moved among other accounts held in the name of Nagel Enterprises and/or Jed Nagel individually," including the accounts from which the defendant funds were seized. (Doc. 1 ¶ 34.)

The court finds that the Verified Complaint states sufficient facts to support a reasonable belief that plaintiff, at trial, will be able to prove that "the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. §[§] 1956 or 1957," and/or that "[t]he Defendant Funds are also subject to forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1341, 1956, or 1957." (*See* doc. 1 § 38.) Therefore, claimants' Motions to Dismiss will be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that claimants' Motions to Strike and Motions to Dismiss, (docs. 9-11), are due to be denied. An Order denying claimants' Motions to Strike and Motions to Dismiss, (docs. 9-11), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 6th day of March, 2013.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE